**United States District Court**

For the Northern District of California

1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9

ENREACH TECHNOLOGY, INC., a Delaware          No. C 04-1255 CW

10  corporation,

ORDER DENYING

11          Plaintiff,                        PLAINTIFF'S
MOTION FOR

12      v.                                    SUMMARY JUDGMENT,
GRANTING IN PART

13  EMBEDDED INTERNET SOLUTIONS, INC.;        AND DENYING IN
SHENZHEN ZHUOZHUANG NETWORK                   PART THE EIS

14  TECHNOLOGY, INC.; GUOHONG XU; JING        DEFENDANTS'
WU; EMBEDDED INTERNET SOLUTIONS              MOTION FOR

15  HOLDINGS LTD.; ZHAOHENG HOLDINGS          SUMMARY JUDGMENT,
LTD.; GUOSHENG XU; ALPHASMART, INC.;          AND GRANTING IN

16  CHANGHONG ELECTRONICS, LTD.; CIRRUS       PART AND STAYING
LOGIC, INC.; INVENTEC CORPORATION;            IN PART THE

17  KYOCERA WIRELESS CORPORATION; OPENTV      CUSTOMER
CORPORATION; PHILIPS SEMICONDUCTOR            DEFENDANTS'

18  INC.; and XOCECO LTD.,                    MOTIONS FOR
SUMMARY JUDGMENT

19          Defendants.

20  _____/

21

22      Plaintiff Enreach Technology, Inc., has moved for summary

23  adjudication of the first, second, sixth, seventh, eighth and tenth

24  causes of action in its fourth amended complaint (FAC) against

25  Defendants Embedded Internet Solutions, Inc. (EIS), ShenZhen

26  ZhuoZhuang Network Technology, Inc., GuoHong Xu and Jing Wu (EIS

27  Defendants).  The EIS Defendants oppose the motion and cross-move

28  for summary adjudication of the second, third, seventh, eighth,

United States District Court

For the Northern District of California

ninth and tenth causes of action in the FAC.[1]  In addition, Defendants Cirrus Logic, Inc. and AlphaSmart, Inc. jointly move for summary adjudication of the second, seventh, eighth and tenth causes of action in the FAC, and Cirrus Logic moves separately for summary adjudication of the seventh, eighth and tenth causes of action.  Enreach opposes these motions.  The matters were heard on August 12, 2005.  Having considered the parties' papers, the evidence cited therein and oral argument on the motions, the Court DENIES Enreach's motion for summary judgment, GRANTS in part and DENIES in part the EIS Defendants' cross-motion for summary judgment, GRANTS in part and STAYS in part the motion for summary judgment filed jointly by Cirrus and AlphaSmart, and GRANTS in part and STAYS in part the motion for summary judgment filed by Cirrus.

BACKGROUND

Enreach develops and markets embedded software products, including interactive television services.  Embedded software is a software program for microprocessors that are embedded in a variety of electronic products such as televisions and cellular telephones. Enreach's products are built around a common software platform called the MicroBrowser, or eBrowser.  In late 1997, Xu and Wu began full-time employment at Enreach as software engineers.  In 1998, Xu was promoted to chief software architect.  It is not disputed that at the time Xu and Wu began working for Enreach they signed an employee confidentiality and proprietary information agreement.  That agreement stated, among other things, as follows:

---

[1] The EIS Defendants' motion for leave to file an amended cross-motion for summary judgment (Docket No. 195) is GRANTED.

**United States District Court**
For the Northern District of California

> I agree at all times during the term of my employment and during the two year period thereafter to hold in strictest confidence, and not to use, except for the benefit of the Company, or to divulge or disclose, directly or indirectly, to any person, corporation or other entity without written authorization of the Board of Directors of the Company, any non-published trade secrets, confidential knowledge, data or other proprietary information (collectively referred to as "Confidential Information") obtained by me during my employment with the Company relating to products, processes, know-how, designs, formulas, developmental or experimental work, computer programs, data bases, other original works of authorship, customer lists, business plans, financial information or other subject matter pertaining to any business of the Company. . . . I agree that I will promptly make full written disclosure to the Company, will hold in trust for the sole right and benefit of the Company, and will assign to the Company all my right, title, and interest in and to any and all inventions, discoveries, developments, improvements, technology, trade secrets, computer programs, know-how, designs, formulas, original works of authorship, or any other confidential materials, data, information or instructions, technical or otherwise and whether or not patentable or copyrightable and whether or not reduced to practice relating to the Company's business (collectively referred to as "Inventions") which I may solely or jointly conceive or develop or reduce to practice, or cause to be conceived or reduced to practice, during the period of time I am in the employ of the Company.

The agreement also incorporated California Labor Code section 2870, which states as follows:

> Any provision in an employment agreement which provides that an employee shall assign, or offer to assign, any of his or her rights in an invention to his or her employer shall not apply to an invention that the employee developed entirely on his or her own without using the employer's equipment, supplies, facilities, or trade secret information except for those inventions that either: (1) Relate at the time of conception or reduction to practice of the invention to the employer's business, or actual or demonstrably anticipated research or development of the employer.  (2) Result from any work performed by the employee for the employer.

The parties do not dispute that, in late 1998 or early 1999, Xu began working on Enreach's MicroBrowser project.  The EIS Defendants submit evidence which Enreach does not dispute that Xu

3

was never involved in the core design of the MicroBrowser source code.

It is not disputed that, in January, 1999, Xu and Wu formed an Internet-based company called CyberAnts.  It is also not disputed that shortly after Xu and Wu formed CyberAnts, and while Xu was still employed by Enreach, they began to develop and write source code for Internet browser applications.  In his sworn declaration, Xu states that these browser applications were related to a web-based fitting room that would allow customers to order custom-tailored clothes online.  Enreach does not dispute that it did not at the time develop any similar web-based applications.  Also in his sworn declaration, Xu states that he initially developed the source code for these applications by downloading and then experimenting with public domain source code relating to the basic functionality of web-based applications and utility functions.  He further states that he did not use the MicroBrowser source code in writing the generic source code for CyberAnts.  The EIS Defendants submit evidence, which Enreach does not dispute, that Xu developed this source code during his personal time and using his personal computer equipment.

Enreach proffers undisputed evidence that, on August 1, 1999, Xu and Wu changed the name of CyberAnts to EIS.  Enreach also submits undisputed evidence that, on September 4, 1999, EIS completed an investment brochure which stated, among other things, that the company planned to become a leader in the market for embedded Internet browser products.  The brochure also described in general terms several functions and features of EIS's browser; it

United States District Court

For the Northern District of California

is not disputed that MicroBrowser contained functions and features similar to those described in EIS's brochure.

On September 17, 1999, Xu left Enreach.  It is not disputed that, when he left Enreach, Xu had a copy of the MicroBrowser source code on his personal laptop.  The EIS Defendants submit undisputed evidence that Xu had copied the source code onto his laptop with Enreach's knowledge before he took a business trip to Germany on behalf of the company.  On November 11, 1999, Wu left Enreach.

According to Xu's declaration, he began to write source code for the EIS embedded Internet browser, called iPanel, only after he left Enreach, and EIS did not complete a working model of iPanel until June, 2000.  It is not disputed that EIS received copyright registrations for nine modules of source code relating to iPanel in July, 2000.  The EIS Defendants acknowledge that Xu had begun to write the source code contained in six of those modules prior to leaving Enreach, but Xu states that this source code was "extremely basic and performed only standard, utility functions found in any Internet program."

Enreach submits evidence of similarities between iPanel and MicroBrowser; its expert, Yan Feng, states that iPanel has, among other things, similar modular structure, a similar method of flow control, and uses the same freeware vendors as does MicroBrowser. The EIS Defendants submit evidence through their expert Robert Wedig that only three files in the current EIS source code are "questionably similar" to files in the Enreach code, and this represents less than one-one hundredth of one percent of the number

5

of files in the EIS code and less than one-tenth of one percent of the number of files in the Enreach code.

In early 2001, Enreach contacted the Santa Clara County District Attorney's Office seeking a criminal investigation of EIS and Xu.  In June, 2001, an investigator from the District Attorney's Office interviewed Xu and several other EIS employees. During his interview, Xu stated that he had not used Enreach source code in creating source code for EIS and that he did not begin writing source code specifically for iPanel until after he left Enreach.  The District Attorney's Office did not pursue criminal charges against Xu or EIS.

It is not disputed that, in September, 2001, EIS released iPanel.  Along with the nine copyright registrations, the iPanel core code is also the subject of several pending patent applications.  Defendant ShenZhen ZhuoZhuang makes and sells iPanel products.  AlphaSmart and Cirrus have licensed iPanel from EIS.

Enreach filed its initial complaint against the EIS Defendants on March 30, 2004.  In the FAC, which it filed on January 28, 2005, Enreach added AlphaSmart, Cirrus and several other Defendants which it alleges have licensed iPanel source code.  The FAC alleges the following causes of action: (1) breach of contract (against Xu and Wu), (2) declaratory judgment that Enreach is the owner of the iPanel registrations (against all Defendants), (3) declaratory judgment that Enreach is the owner of the pending iPanel patent applications (against the EIS Defendants), (4) fraudulent concealment of inventions (against Xu and Wu), (5) breach of covenant of good faith and fair dealing (against Xu and Wu),

6

(6) breach of fiduciary duty (against Xu and Wu), (7) unjust enrichment (against all Defendants), (8) copyright infringement (against all Defendants), (9) unfair competition (against the EIS Defendants), and (10) unfair competition (against all Defendants).

On February 18, 2005, Enreach filed its motion for summary judgment.  On March 8, 2005, the Court granted a motion to continue the summary judgment hearing filed by the EIS Defendants and denied without prejudice as premature Enreach's summary judgment motion. At a case management conference on April 8, 2005, the Court reinstated Enreach's summary judgment motion and scheduled briefing.  The Court also set November 18, 2005 as the fact discovery cut-off for the Defendants, including Cirrus and AlphaSmart, that were added in the FAC.  On June 17, 2005, Cirrus and AlphaSmart filed their joint motion for summary judgment, and Cirrus filed its summary judgment motion.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  Celotex, 477 U.S. at 324; Eisenberg, 815

7

**United States District Court**

For the Northern District of California

F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of showing that no genuine issue of material fact remains by demonstrating that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 325.  The moving party is not required to produce evidence showing the absence of a material fact on such issues, nor must the moving party support its motion with evidence negating the non-moving party's claim.  Id.; see also Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v. NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991), cert. denied, 502 U.S. 994 (1991).  If the moving party shows an absence of evidence to support the non-moving party's case, the burden then shifts to the opposing party to produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." Bhan, 929 F.2d at 1409.  A complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

Celotex, 477 U.S. at 323.

Where the moving party bears the burden of proof on an issue at trial, it must, in order to discharge its burden of showing that no genuine issue of material fact remains, make a prima facie showing in support of its position on that issue.  See UA Local 343 v. Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994). That is, the moving party must present evidence that, if uncontroverted at trial, would entitle it to prevail on that issue. See id.; see also Int'l Shortstop, Inc. v. Rally's, Inc., 939 F.2d 1257, 1264-65 (5th Cir. 1991).  Once it has done so, the non-moving party must set forth specific facts controverting the moving party's prima facie case.  See UA Local 343, 48 F.3d at 1471.  The non-moving party's "burden of contradicting [the moving party's] evidence is not negligible."  Id.  This standard does not change merely because resolution of the relevant issue is "highly fact specific."  See id.

DISCUSSION

I.   EIS Defendants

A.   Breach of Contract Claim

Enreach argues that there is undisputed evidence that Xu and Wu conceived iPanel and reduced it to practice while they were employed at Enreach, thereby breaching the confidentiality and assignment provisions of the employment agreement that they each signed when they began working for the company.  As evidence, Enreach cites (1) the brochure that EIS had completed by September 4, 1999 which described in general terms the planned embedded browser that would become iPanel, and (2) the source code contained

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

in six of the nine modules for which EIS has copyright registrations that the EIS Defendants acknowledge Xu worked on while still employed at Enreach.  Enreach also cites the similarities between the MicroBrowser and iPanel source code that were identified by its expert.

Opposing Enreach's motion for summary adjudication of this claim, the EIS Defendants argue that the iPanel source code was not subject to the Enreach employment agreements.  Xu states in his declaration that the source code he developed while still employed at Enreach related to low-level utilities and the basic functionality necessary for any web-based application, and that he derived it from public domain source code.  Xu also states that he originally developed this initial source code for the purpose of using it for an online clothes-shopping and custom-fitting web site, and that he wrote the code on his personal time and using his own computer equipment.  He states that he did not begin writing source code specifically for iPanel until after he left Enreach and that he did not use any MicroBrowser code in doing so; the EIS Defendants note that it is not disputed that EIS did not have a working model of iPanel until June, 2000, nine months after Xu left Enreach, and seven months after Wu left.

Thus, there is a material factual dispute whether the iPanel source code identified by Enreach falls within the exception described in California Labor Code section 2870.  Enreach's motion for summary adjudication of its first cause of action for breach of contract is denied.

10

**United States District Court**
For the Northern District of California

B.    Claims for Declaratory Judgment that Enreach is Owner of EIS's Intellectual Property

The parties cross-move for summary adjudication of Enreach's second and third causes of action for declaratory judgment that it has ownership rights in the nine copyright registrations of iPanel source code and the pending iPanel-related patent applications. These claims arise out of Enreach's allegations and evidence that Xu and Wu conceived of and created iPanel while still employed at Enreach, and thus were contractually obliged to assign to Enreach the iPanel copyrights and patent applications.  Enreach again cites the September, 1999 brochure, which described an EIS embedded browser, and the undisputed evidence that Xu developed part of six of the nine copyrighted modules while still employed at Enreach.

However, as discussed above, there is a material dispute (1) whether Xu and Wu breached their employment contracts with Enreach and (2) regarding the extent to which Xu developed iPanel-specific source code while still employed at Enreach.

The EIS Defendants argue that they are entitled to summary judgment on these claims because even if Enreach could prove that Xu and Wu did breach their employment contracts, Enreach would not have an ownership interest in EIS's intellectual property.  The EIS Defendants cite Arachnid, Inc. v. Merit Indus., Inc., 939 F.2d 1574, 1580-81 (Fed. Cir. 1991), in which the court ruled that an agreement to assign future inventions not yet developed could not serve as the basis for transfer of legal title to those inventions. However, the Arachnid court held that such promises to assign "may vest the promisee in equitable rights in those inventions once

11

United States District Court

For the Northern District of California

1   made." Id. (emphasis in original).  In its second and third causes

2   of action, Enreach alleges that EIS's registrations are the

3   intellectual property of Enreach that Xu and Wu hold in trust for

4   the sole right and benefit of Enreach.  Thus, Enreach is seeking

5   equitable remedies under these claims, which the Arachnid court

6   held it may do.

7        For the foregoing reasons, the parties' cross-motions for

8   summary adjudication of the second and third causes of action for

9   declaratory judgment are denied.

10       C.   Breach of Fiduciary Duty Claim

11       Enreach moves for summary adjudication of the FAC's sixth

12  cause of action, against Xu and Wu, for breach of fiduciary duty.

13  In California, a fiduciary of a corporation is defined as "an

14  officer who participates in management of the corporation,

15  exercising some discretionary authority." GAB Bus. Servs., Inc. v.

16  Lindsey & Newsom Claim Servs., Inc., 83 Cal. App. 4th 409, 420-21

17  (2000), overruled on other grounds by Reeves v. Hanlon, 33 Cal. 4th

18  1140 (2004).

19       Here, Enreach submits no argument or evidence that Wu was ever

20  an officer with any discretionary authority at Enreach.  Enreach

21  does argue that Xu, as chief software architect, meets the standard

22  for a fiduciary; it submits evidence in the form of a declaration

23  by its chief executive officer Bo Wu that Xu managed a team of

24  twenty software engineers.  However, this does not amount to

25  evidence that Xu was an officer at Enreach or that he participated

26  in the management of the corporation.  And, in opposition to

27  Enreach's motion for summary adjudication of this claim, the EIS

28                                   12

United States District Court
For the Northern District of California

Defendants submit undisputed evidence that, while Xu did manage the projects and schedules of the software engineers, they reported directly to Bo Wu and not to Xu.

For the foregoing reasons, Enreach's motion for summary adjudication of its sixth cause of action for breach of fiduciary duty is denied.

D.   Unjust Enrichment Claim

The parties cross-move for summary adjudication of the FAC's seventh cause of action for unjust enrichment.  As the EIS Defendants note, unjust enrichment is not a valid cause of action in California.  See McBride v. Boughton, 106 Cal. App. 4th 379, 387 (2004) ("Unjust enrichment is not a cause of action, or even a remedy, but rather a general principle, underlying various legal doctrines and remedies.").

Enreach cites no case law holding that a party may plead a cause of action for unjust enrichment.  Instead, Enreach appears to argue that its unjust enrichment claim is based upon a theory of constructive trust: if Wu and Xu breached the employment contract, a constructive trust should be imposed upon EIS covering the iPanel source code.  Enreach does request in its second and third causes of action that the Court impose a constructive trust on the iPanel-related intellectual property.

The Court has denied the parties' cross-motions for summary adjudication of the second and third causes of action, and Enreach may pursue a constructive trust remedy on those claims.  However, because unjust enrichment is not a valid cause of action in California, the EIS Defendants are entitled to summary adjudication

13

United States District Court

For the Northern District of California

1  of the FAC's seventh cause of action for unjust enrichment.

2      E.   Copyright Infringement Claim

3      The parties cross-move for summary adjudication of the FAC's

4  eighth cause of action for copyright infringement.  "In order to

5  establish infringement, two elements must be proven: (1) ownership

6  of a valid copyright, and (2) copying of constituent elements of

7  the work that are original."  Rice v. Fox Broadcasting Co., 330

8  F.3d 1170, 1174 (9th Cir. 2002).  However, "even where the fact of

9  copying is conceded, no legal consequences will follow from that

10 fact unless the copying is substantial. . . . In addition to

11 copying, it must be shown that this has been done to an unfair

12 extent."  Newton v. Diamond, 388 F.3d 1189, 1193 (9th Cir. 2004)

13 (internal citations omitted).  Where there is no evidence of direct

14 copying, a plaintiff may establish copying by showing that the

15 defendant had access to the work in question and that the two works

16 are "substantially similar" in idea and expression.  Smith v.

17 Jackson, 84 F.3d 1213, 1218 (9th Cir. 1996).

18     Enreach argues first that it is the rightful owner of the nine

19 EIS copyright registrations relating to iPanel.  Second, Enreach

20 argues that EIS directly copied Enreach's MicroBrowser source code,

21 and it submits evidence through its expert Mr. Feng of several

22 similarities in the source code of iPanel and MicroBrowser,

23 including between the browsers' modular structures, methods of flow

24 control, and freeware vendors.  And, Enreach argues that the direct

25 copying is not de minimis.

26     With respect to Enreach's first theory, as discussed above,

27 there is a material factual dispute whether Enreach has any

28                            14

United States District Court

For the Northern District of California

equitable rights to EIS's copyright registrations.

With respect to Enreach's second theory, the EIS Defendants' expert Dr. Wedig states that there is minimal evidence of direct code copying; the similar code amounts to a fraction of a percent of the source code comprising the two companies' browsers.  Dr. Wedig also states that the similarities between the source codes in the companies' browsers encompass only unprotectable expression because they involve basic and standard methods used by those versed in the arts of computer programming and code writing.

The parties have submitted competing evidence through their experts relating to whether there is sufficient evidence of direct copying and whether the iPanel code is substantially similar in idea and expression to the MicroBrowser code.  Thus, the parties' cross-motions for summary adjudication of the FAC's eighth cause of action for copyright infringement are denied.

F.   Unfair Competition Law Claims

The parties cross-move for summary adjudication of the FAC's ninth and tenth causes of action for unfair competition.  The ninth cause of action, asserted against only the EIS Defendants, is based in part upon Enreach's allegations of copyright infringement and in part upon Xu and Wu's alleged failure to assign their work relating to iPanel in accordance with their employment agreements.  The tenth cause of action, against all Defendants, is based upon Enreach's remaining allegations of, among other things, copyright infringement and breach of the covenant of good faith and fair dealing.

The unfair competition law "embraces anything that can

15

United States District Court

For the Northern District of California

properly be called a business practice and that at the same time is forbidden by law." Korea Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1135 (Cal. 2003). In other words, section 17200 et seq. "borrows" violations from other laws and makes them independently actionable as unfair business practices. Id.

To the extent that the ninth cause of action for unfair competition is based upon allegations of copyright infringement, it is preempted by federal law. The Copyright Act states that it exclusively governs "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope" of the Act and states further that "no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State." 17 U.S.C. § 301(a). In Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998), the Ninth Circuit ruled that the plaintiff's unfair competition law claim, which was based solely upon its claim for copyright infringement, was preempted.

As the EIS Defendants note, the FAC's first cause of action for breach of contract, the only other allegation upon which the ninth cause of action is based, is asserted against only Xu and Wu. Thus, the Court grants the EIS Defendants' motion for summary adjudication of the ninth cause of action against EIS and ShenZhen ZhuoZhuang, but denies it with respect to the ninth cause of action against Xu and Wu arising out of Enreach's breach of contract claim.

The FAC's tenth cause of action for unfair competition is based upon "misappropriation of trade secrets, fraud, breach of

16

United States District Court

For the Northern District of California

contract, breach of fiduciary duty, breach of covenant of good faith and fair dealing, unjust enrichment, and/or copyright infringement." Enreach's claims for fraud and trade secret misappropriation were dismissed as time-barred, without leave to amend, by the State court. Moreover, a common law cause of action based upon allegations of trade secret misappropriation is preempted by the Uniform Trade Secrets Act. See Digital Envoy, Inc. v. Google, Inc., 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005). And, the Court has granted the EIS Defendants' motion for summary adjudication of Enreach's claims for unjust enrichment and has ruled that an unfair competition law claim based upon alleged copyright infringement is preempted. Enreach's remaining causes of action upon which this claim is based -- breach of contract, breach of covenant of good faith and fair dealing and breach of fiduciary duty -- are asserted against only Xu and Wu.

The Court denies Enreach's motion for summary adjudication of its tenth cause of action, and grants the EIS Defendants' motion with respect to EIS and ShenZhen ZhuoZhuang. The Court denies the EIS Defendants' motion for summary adjudication of the tenth cause of action against Xu and Wu arising out of the FAC's claims for breach of contract, breach of the covenant of good faith and fair dealing and breach of fiduciary duty.

II.  Customer Defendants

Cirrus and AlphaSmart move jointly for summary adjudication of the second, seventh, eighth and tenth causes of action in the FAC, and Cirrus moves separately for summary adjudication of the seventh, eighth and tenth causes of action.

17

**United States District Court**
For the Northern District of California

A.    Claims for Declaratory Judgment that Enreach has
      Ownership Rights in EIS's Copyright Registrations

Cirrus and AlphaSmart argue that there is no actual controversy to support Enreach's second cause of action as against them.  A copyright action for declaratory judgment "presents a justiciable case or controversy if the defendant's actions have caused the declaratory judgment plaintiff to harbor a real and reasonable apprehension that he will be subject to liability if he continues to manufacture his product." <u>Xerox Corp. v. Apple Computer, Inc.</u>, 734 F. Supp. 1542, 1546 (N.D. Cal. 1990), citing <u>Hal Roach Studios v. Richard Feiner & Co.</u>, 883 F.2d 1429 (9th Cir. 1989).

Here, Cirrus and AlphaSmart submit evidence that they have claimed no ownership interest in the iPanel copyright registrations, and that they have taken no action that would cause Enreach to harbor a reasonable apprehension that it would be subject to liability for copyright infringement.  They submit further evidence, which Enreach does not dispute, that Enreach has acknowledged that Cirrus has made no claim of ownership in the EIS copyrights.  And Enreach states in its opposition brief that it does not contend that "that AlphaSmart or Cirrus is claiming ownership of the EIS registrations."

Enreach argues that a controversy with respect to AlphaSmart and Cirrus exists because, if Enreach is found to have equitable rights to the EIS copyrights, AlphaSmart and Cirrus may be liable for copyright infringement.  However, that does not satisfy the test for declaratory judgment justiciability set forth in <u>Xerox</u>.

18

United States District Court

For the Northern District of California

734 F. Supp. at 1546.  Thus, Cirrus and AlphaSmart's motion for summary adjudication of the second cause of action for declaratory judgment of ownership of the EIS copyright registrations is granted.

B.   Unjust Enrichment Claim

As discussed above, Enreach may not pursue a cause of action for unjust enrichment.  Thus, the motions for summary adjudication of the FAC's seventh cause of action are granted.

C.   Copyright Infringement Claim

Cirrus and AlphaSmart argue in both summary judgment motions that the Court lacks subject matter jurisdiction over Enreach's claim for copyright infringement (eighth cause of action) because the gravamen of the FAC is that EIS's copyright registrations are invalid.  If those registrations are invalid, argue Cirrus and AlphaSmart, they cannot form the basis of an infringement claim.

However, Enreach does not allege that the copyright registrations for the nine iPanel source code modules are invalid, but rather that it holds equitable rights to those registrations because Xu and Wu breached their employment contracts and failed to assign the iPanel copyrights to Enreach.  Thus, these Defendants' argument is not well-taken.

Cirrus and AlphaSmart also argue that there is no evidence to support Enreach's claim for unjust enrichment based on copyright infringement because there is no evidence to support Enreach's allegations that AlphaSmart or Cirrus knew or should have known that the code they licensed from EIS was misappropriated.  Enreach responds that it has not yet conducted discovery with respect to

19

**United States District Court**
For the Northern District of California

its claim that Cirrus and AlphaSmart knew or had reason to know that iPanel had been misappropriated when they licensed the product from EIS and contends that without discovery it cannot adequately oppose the motion on these grounds.

Cirrus argues in its separate motion for summary judgment that it cannot be liable for copyright infringement because (1) it has never sold any product containing the accused iPanel software to any of its customers, and (2) it manufactured only a single development board containing the accused iPanel software, and thus its alleged infringement was <u>de minimis</u> and not actionable as a matter of law.  Enreach again submits evidence that it has not yet had the opportunity to conduct discovery relating to whether Cirrus has sold products containing iPanel code or the extent to which it used iPanel in its demonstration boards.  Enreach contends that without discovery it cannot adequately oppose the motion on these grounds.

Enreach's opposition to Cirrus' and AlphaSmart's motions for summary adjudication of this claim is, in effect, a request pursuant to Federal Rule of Civil Procedure 56(f) to stay summary adjudication of this claim pending further discovery.  The district court should deny or continue a motion for summary judgment if the opposing party makes a good faith showing by affidavit that the continuance is necessary to obtain facts essential to oppose the motion.  <u>State of California v. Campbell</u>, 138 F.3d 772, 779 (9th Cir. 1998) (citing <u>McCormick v. Fund American Cos., Inc.</u>, 26 F.3d 869, 885 (9th Cir. 1994)).  Parties seeking a continuance must show: "(1) that they have set forth in affidavit form the specific

facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." Campbell, 138 F.3d at 779.

Enreach's affidavit is sufficient to meet the Rule 56(f) standard. Enreach may, within sixty days of the date of this order, file a supplemental brief of not longer than ten pages opposing Cirrus' and AlphaSmart's motion for summary adjudication of Enreach's eighth cause of action for copyright infringement. Cirrus and AlphaSmart may file a supplemental reply brief on their joint motion of not longer than five pages one week later. Cirrus may file a supplemental reply brief on its separate motion of not longer than five pages one week later as well. The matter will be decided on the papers.

D.   Unfair Competition Claim

As discussed above, Enreach may pursue its tenth cause of action for unfair competition based only upon its allegations of breach of contract, breach of the covenant of good faith and fair dealing and breach of fiduciary duty, which it asserts against only Xu and Wu. As discussed above, Enreach's claims for unfair competition based upon its allegations of copyright infringement and trade secret misappropriation are preempted, and it has not asserted against Cirrus or AlphaSmart the remaining claims upon which it bases its tenth cause of action. Thus, Cirrus and AlphaSmart's motions for summary adjudication of the FAC's tenth cause of action are granted.

21

United States District Court

For the Northern District of California

1

CONCLUSION

2      For the foregoing reasons, the Court DENIES Enreach's motion

3 for summary judgment (Docket No. 78), GRANTS in part and DENIES in

4 part the EIS Defendants' cross-motion for summary judgment (Docket

5 No. 143), GRANTS in part and STAYS in part the motion for summary

6 judgment filed jointly by Cirrus and AlphaSmart (Docket No. 137),

7 and GRANTS in part and STAYS in part the motion for summary

8 judgment filed by Cirrus (Docket No. 140).  The EIS Defendants'

9 motion for summary adjudication of the second, third and eighth

10 causes of action is denied; its motion for summary adjudication of

11 the ninth and tenth causes of action against Xu and Wu is also

12 denied.  The EIS Defendants' motion for summary adjudication of the

13 seventh cause of action is granted; their motion for summary

14 adjudication of the ninth and tenth causes of action against EIS

15 and ShenZhen ZhuoZhuang is also granted.  The motion for summary

16 adjudication filed jointly by Cirrus and AlphaSmart is granted with

17 respect to the second, seventh and tenth causes of action and

18 stayed with respect to the eighth cause of action.  Cirrus' motion

19 for summary adjudication of the seventh and tenth causes of action

20 is granted.  Cirrus' motion for summary adjudication of the eighth

21 claim is stayed.  The parties may brief this issue further as set

22 forth above.

23      The Court GRANTS the EIS Defendants' motion for leave to file

24 their amended cross-motion for summary judgment (Docket No. 195).

25 The Court DENIES as moot Enreach's motion to strike new arguments

26 it alleges were made in the EIS Defendants' reply brief (Docket No.

27 214); the Court did not consider any new arguments.  The Court also

28
                                22

DENIES as moot the parties' joint stipulation staying discovery and scheduling order deadlines pending summary judgment orders (Docket No. 267).

IT IS SO ORDERED.

Dated: 9/22/05

_____
CLAUDIA WILKEN
United States District Judge